IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURYCE ANTHONY LIGGINS,<br><br>            Petitioner,<br><br>    vs.<br><br>MIKE D. MCDONALD, Warden, High Desert State Prison,<br><br>            Respondent. | No. 2:11-cv-2336-JKS<br><br>MEMORANDUM DECISION |

Mauryce Anthony Liggins, a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Liggins is currently in the custody of the California Department of Corrections and Rehabilitation and is incarcerated at High Desert State Prison. Respondent has answered, and Liggins has not replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On February 6, 2008, a jury convicted Liggins of discharging a firearm at an inhabited dwelling (Count 1), unlawful possession of a firearm (Count 2), and three counts of endangering a child (Counts 3-5). The jury also found true gang enhancement allegations on Counts 1, 3, 4, and 5. Liggins was sentenced to a determinate term of 10 years and 8 months of imprisonment followed by an indeterminate term of 15 years to life.

On direct appeal, the California Court of Appeal summarized the facts and allegations underlying Liggins's conviction:

*Prosecution Case-In-Chief*

On January 10, 2007, Lamont West, who was one of the toughest members of the Nogales Crips street gang, got into an argument with Paul Bell (known as P-Loc) and Kenyatta Hudson (known as Old Man). Like West, Bell and Hudson were members of

the gang.  The argument started when West asked Bell who his "big homey" (leader of the gang) was, and Bell replied Hudson rather then West.

The next afternoon, West and [Liggins], who had a gun, drove to Bell's house.  In the van with them were Donita Brooks (West's girlfriend), Brooks's three children (ages 6, 4, and 3), and Laqresha Townsend (Brooks's cousin).  West was the driver.  Brooks sat in the front passenger seat.  [Liggins] and the children were on the floor where the second row seats had been removed.  Townsend sat in the third row of seats.

Before the group began driving to Bell's house, Townsend heard West and [Liggins] discuss West's argument with Bell the previous day.  In Townsend's words, [Liggins] said "they could handle it . . . right now or right then."

When they drove by Bell's residence, [Liggins] (who was an associate of the Crips gang in 2001) and West fired gunshots at the house.  The children in the van were scared and crying.

Officers John-Steven Asvitt and Mike Hight–who happened to be nearby–heard the shots and stopped the van.  Townsend later said that, as the officers arrived, West put his gun in the glove box and [Liggins] placed his gun under the rear passenger seat.

After ordering everyone out of ·the vehicle, officers found a loaded nine-millimeter semiautomatic handgun in the glove box and a .40-caliber semiautomatic pistol, possibly unloaded, under the rear passenger seat.  The nine-millimeter handgun had one bullet in the chamber and eight rounds in a magazine that could hold 15 rounds.  Two shell casings were recovered from the rear passenger area, and one casing was recovered from the roadway underneath the driver's seat.  [Liggins's] fingerprints were discovered on the magazine for the .40-caliber gun.

A search of West's home revealed nine-millimeter ammunition and photographs of West and others displaying gang-related hand signs and wearing blue clothing, the color worn by Crips gang members.

Detective Justin Johnson, an expert on the Nogales Gangster Crips, testified as follows:

The gang's primary activities included attempted murders, assaults with deadly weapons, robberies, narcotics sales, and intimidating witnesses.

Problems can arise among members of the same gang regarding money, women, or "whatever [a member] feels was disrespect[ful]" to him; it could include anything the member feels a need "to act out on. That could be up to [him]."

Gang culture requires that a member who has been treated in a disrespectful manner must impose discipline on the person who was disrespectful.  If no such discipline is imposed, the victim of the disrespect could lose the respect of other gang members and be perceived as "soft."  This information travels throughout the community and the gang culture.  Members of other gangs "would look at him as being weak or losing some kind of status within their own gang."

Telling a gang member that someone other than he is the leader would be perceived by the gang member as a disrespectful remark.  Committing a violent

act, such as a drive-by shooting, against the person who made the remark would send the message "he shouldn't do that [be disrespectful]."

Typically, gang activities are committed only by gang members or associates. A "member" is "somebody who is . . . willing" to claim membership in the gang and "is willing to represent it"; whereas, an "associate" is "usually somebody who just hangs around just likes to be around the gang itself. They know[] everybody from . . . growing up in the neighborhood."

When a gang member feels another member has been disrespectful and must be disciplined, the member would allow only those he trusts to participate in the shooting.

Drive-by shootings are inherently dangerous not only to the intended targets and innocent bystanders who might get hit, but also to the shooters because of the risk of immediate retaliation by the targets, effectively creating "warfare on the streets." The risk of retaliation is greater if the drive-by shooting is committed on gang turf. And there is the risk of citizen or police response.

Terrah Tillman, an expert in early childhood development and trauma, testified as follows:

She was involved in the weekly treatment of the three children (D.T., Y.B., and Z.K.) who were in the van during the shooting at Bell's residence. The children, who had been removed from their mother's custody, were "extremely high in irritability, aggression, [and] disassociation;" they had nightmares and difficulty sleeping.

After a few days at the Children's Receiving Home of Sacramento, D.T. began sucking his thumb; whether he had done so prior to the incident was not known. Y.B. would "just check out and rock herself; she would not respond when people called her name. Z.K. would rock herself and engage in bizarre behavior.

D.T. told Tillman the shooting upset him. Y.B. was more guarded; she would say she had not been afraid and would tease D.T. for having cried during the incident. Believing this was an "unhealthy" way to deal with stress, Tillman encouraged Y.B. to talk about her feelings. Z.K., the youngest child, talked "a lot about just violence in general, and threatening, and violent statements, and things like that.

Car rides triggered a change in the children's behavior; they acted out more aggressively and made inappropriate comments, demonstrating their anxiety while in the car. D.T. would change his tone of voice, be aggressive, hysterical, and non-compliant, and start talking about shooting people. Y.B. would "check[] out" and "disassociat[e]" during car rides. Z.K. would change her tone of voice to a "tough mean demeanor," yell threats, and talk about gangs and guns.

Based on the severity of the children's symptoms, Tillman opined that they suffered from posttraumatic stress disorder (PTSD), which consists of symptoms associated with a traumatic or life-threatening event and can last from four weeks to a

3

lifetime.  Symptoms include hypervigilance, hyperactivity, increased motor activity, increased muscle tension, nightmares, dissociation, violence, reenactment, aggression, irritability, and regression.  A PTSD diagnosis requires that the symptoms be "distressing to the client."

Tillman acknowledged the children came from a tough background, including prior Child Protective Services (CPS) intervention and possibly differing sorts of trauma throughout their lives. However, given "the amount that they were talking about the car ride and the shootings," the drive-by shooting on January 11, 2007, seemed to be a key factor in the PTSD diagnosis.

*Defense*

Lisa Perrine, Ph.D., an expert in clinical psychology, testified as follows:
Symptoms of PTSD in children include disorientation, agitation, anxiety, and aggression. In children, PTSD could be a response to a single event or it could be a "response to an accumulation of fairly traumatic events, or events that the child experiences as fairly traumatic."  A "full picture" is necessary before diagnosing a child with PTSD and recommending treatment.

She reviewed documents from the Children's Receiving Home of Sacramento, including documents from CPS, and observed no further research had been conducted into the degree of CPS involvement.  Perrine noted that, during a discussion of the drive-by shooting, D.T. had mentioned an earlier incident in which his mother's live-in boyfriend had pointed a gun at the mother's head and had pulled the trigger.  This was a traumatic event that could have led to symptoms of PTSD.

In Perrine's view, all three children were properly diagnosed with PTSD but there was no way of knowing whether the children had suffered from PTSD prior to the drive-by shooting.

Liggins, represented by counsel, appealed his conviction to the state appellate court.  On direct appeal, he argued that the gang enhancements assessed on Counts 1, 3, 4, and 5 were improper because the shooting was done for personal reasons and not for the benefit of the Nogales Crips gang.  He further asserted that Counts 3 through 5 were not supported by sufficient evidence of child endangerment because "the circumstances or conditions surrounding the incident were not shown to be likely to produce great bodily harm or death," and "the People have not shown that post-traumatic stress disorder is a form of mental suffering as required by the statute."  Finally, he argued that the court erred in sentencing by imposing multiple

punishments for the same conduct and that the judgment should be corrected to reflect that gang enhancements were imposed but stayed on Counts 4 and 5.

The Court of Appeals affirmed Liggins's conviction in an unpublished, reasoned decision issued October 20, 2009. *People v. Liggins*, No. C059094, 2009 WL 3358177 (Cal. Ct. App. Oct. 20, 2009). The appellate court concluded that the gang enhancements were supported by substantial evidence and proper because, based on the gang expert's testimony, "[r]easonable jurors could deduce from [Liggins's] participation in the shooting that he was at least an associate of the Nogales Crips and that he intended to act in a manner benefitting the gang." The appellate court also determined that Counts 3 through 5 were supported by sufficient evidence of child endangerment and rejected Liggins's multiple punishment claim. The court did, however, correct the abstract of judgment to reflect that gang enhancements were imposed and stayed on Counts 4 and 5 and to correct a typographical error, which had no net effect on his sentence term. Liggins sought leave to appeal the decision to the state supreme court, which summarily denied review.

On September 21, 2010, Liggins filed in state court a *pro se* petition for writ of habeas corpus. He alleged that the evidence was insufficient to support his convictions for shooting at an inhabited dwelling and aiding and abetting. Liggins further contended that the evidence and jury's verdict did not support the imposition of the gang enhancements. He additionally argued that the prosecutor committed misconduct by improperly withholding exculpatory evidence and that his Sixth Amendment right to confrontation was violated when the testimony of Old Man and Douglas Bell was introduced through the examination of Detective Johnson. Finally,

Liggins asserted that both his trial and appellate counsel rendered ineffective assistance of counsel.

The Superior Court denied the petition in an unpublished, reasoned opinion.  The court first determined that there was sufficient evidence to support Liggins's convictions for shooting at an inhabited dwelling and aiding and abetting and thus his appellate counsel was not ineffective for failing to raise those issues on appeal.  The court also held that Liggins's insufficient evidence claim as to the gang enhancement was procedurally barred because it had been raised and rejected on appeal.  The court likewise rejected Liggins's prosecutorial misconduct claim and the corresponding ineffective assistance of counsel claim, finding that Liggins failed to present the evidence in question and that such evidence would have been merely cumulative.  The court further determined that the jury's verdict supported the imposition of the gang enhancements.  Finally, the court rejected Liggins's claims that his trial counsel was ineffective in his closing argument and that his appellate counsel was ineffective for failing to raise the issue on appeal, finding no prejudice because it was not reasonably likely that the closing argument affected the outcome of the trial.  Liggins subsequently filed a habeas petition in the state appellate court, which the appellate court summarily denied on December 2, 2010.  Liggins likewise filed a habeas petition in the state supreme court, which the supreme court denied without comment on August 10, 2011.

Liggins timely filed a petition for writ of habeas corpus to this Court on September 2, 2011.

## II. GROUNDS/CLAIMS

Liggins asserts eleven grounds for habeas relief, including allegations that: 1) the evidence at trial was insufficient to support the conviction; 2) there was no evidence to support the aiding and abetting allegation; 3) the evidence at trial was insufficient to support the enhancements; 4) the prosecutor committed misconduct by withholding exculpatory evidence; 5) he was denied his Sixth Amendment right to confrontation; 6) the jury's verdict did not authorize the imposition of sentencing enhancements; 7) trial counsel rendered ineffective assistance; 8) appellate counsel rendered ineffective assistance; 9) the evidence at trial was insufficient to support a gang enhancement; 10) the evidence at trial was insufficient to support a finding of felony child endangerment; and 11) he was subjected to multiple punishments for a single act.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412.  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002).  Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)).  Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Liggins has not replied to Respondent's answer.  The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true."  28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952).  Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *See Phillips v. Pitchess*, 451 F.2d 913, 919 (9th Cir. 1971).

IV. DISCUSSION

1.    *Legal Sufficiency Claims* (Claims 1, 2, 3, and 10)

Liggins first challenges his conviction and imposed sentence by asserting a laundry list of alleged legal insufficiencies.

A.    *Jackson Standard on Habeas Review.*

As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see also McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must therefore determine whether the California court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. This Court must also be ever mindful of the

9

deference owed to the trier of fact and the sharply limited nature of constitutional sufficiency review. *Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005). A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). It is through this lens that this Court must view an insufficiency of the evidence claim.

B.      *Claim 1: Legal sufficiency of evidence to support conviction.*

Liggins first claims that "the evidence was insufficient to support the conviction and the judgment violates [the] Due Process Clause of the United States Constitution." Although his Petition asserts facts, *id.*, the Court cannot discern how these vague facts support his contention. Consistent with the rule that prisoner *pro se* pleadings are given the benefit of liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), this Court will construe his claim as renewing the insufficiency of the evidence claim he brought in his habeas petition to the state superior court. In that claim, Liggins argued that the evidence at trial was insufficient to support the jury's verdict that he shot at an inhabited dwelling. The state court denied the claim, stating:

> [Liggins] admits that evidence was admitted at trial that two witnesses, both of whom testified at trial, had stated that [Liggins] had fired the .40 caliber gun, but claims only that the two witnesses were lying. That, however, is not a showing of insufficiency of the evidence. The evidence, if believed by the trier of fact, was sufficient to support the Penal Code § 246 conviction. The court, on either appeal or habeas corpus, will not reweigh the evidence or determine which evidence is more believable than other evidence. And, even more damaging to petitioner, in two places in the petition he admits that he himself stated to a detective, Detective Sample, that he had fired the .40 caliber

10

gun in the air and that that was admitted at trial.  Clearly, the evidence was sufficient for a jury to have rested its verdict upon, and the claim is denied.

Liggins likewise misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction.  Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction.  *See Schlup v. Delo*, 513 U.S. 298, 340 (1995).  In this case, the California Superior Court determined that there was sufficient evidence of each element of the crime of shooting at an inhabited dwelling as defined in California law to support Liggins's conviction.  Although it might have been possible to draw a different inference from the evidence, this Court is required to resolve that conflict in favor of the prosecution.  *See Jackson*, 443 U.S. at 326.  Liggins bears the burden of establishing by clear and convincing evidence that these factual findings were erroneous.  28 U.S.C. § 2254(e)(1).  Liggins has failed to carry such burden.  The record does not compel the conclusion that no rational trier of fact could have found proof that Liggins shot at an inhabited dwelling, especially considering the double deference owed under *Jackson* and AEDPA.  Liggins is therefore not entitled to relief on this legal insufficiency claim.

C.      *Claim 2.  Legal sufficiency of evidence to support aiding and abetting.*

Liggins next claims that the evidence was insufficient to demonstrate that Liggins aided and abetted a shooting at an inhabited dwelling.  Liggins appears to argue that a witness falsely testified as to a statement by Liggins.  *Id.*  Liggins also raised this claim in his state habeas petition, which the court denied:

> The claim fails because the evidence was sufficient to support the conviction on a theory that [Liggins] himself fired the gun he possessed.  Regardless, the evidence was sufficient to show that [Liggins] aided and abett[ed] the second shooter.  Again, [Liggins] challenges the conviction only because he wants this court to reweigh the evidence and find certain evidence more credible than other evidence, which the court will not do on

habeas corpus.  There was evidence presented at trial, in the form of statements of two witnesses, that was sufficient to show that he both shot his own gun and was acting to aid and abet the second shooter, and the claim is denied.

Again, Liggins fails to establish by clear and convincing evidence that the state court's factual findings were erroneous and the record does not compel the conclusion that no rational trier of fact could have found proof that Liggins aided and abetted a shooting at an inhabited dwelling.  Liggins is therefore not entitled to relief on this legal insufficiency claim either.

D.     *Claim 3.  Legal sufficiency of evidence to sustain the conclusion that the shooting was committed with the intent to benefit a criminal street gang.*

Liggins also claims that the evidence failed to show that the shooting was committed with the intent to benefit a street gang.  He seems to contend that the jury's verdict was unreasonable because there was conflicting evidence as to statements he and codefendants made at the scene as well as evidence suggesting that no one was at the home at the time of the shooting.  *Id.*  Liggins raised this claim on direct appeal of his conviction.  The appellate court addressed and denied the claim in a reasoned decision:

> [Liggins] contends the gang enhancements on counts one, three, four, and five are not supported by sufficient evidence and must be set aside.  Specifically, he claims the shooting was done for personal reasons and not for the benefit of the Nogales Crips gang.  We are not persuaded.
> . . . .
> From the premise that "[b]oth the victim (Paul Bell) and the perpetrator (West) were members of the same gang," [Liggins] argues "[t]his was not an inter-gang shooting done to enhance respect for the Nogales Crips; it was an intra-gang shooting.  No benefit could possibly accrue to the gang as a group from this drive-by shooting."  The evidence establishes otherwise.
> An expert testified that, when a gang member has been treated in a disrespectful manner, gang culture requires the member to "discipline" the person who treated the member disrespectfully.  If no discipline is imposed, the gang member could lose the respect of other members of the gang and be perceived as "soft."  Such information travels throughout the community and the gang culture.  Members of other gangs "would look at him as being weak or losing some kind of status within their own gang."

Therefore, retaliation that directly preserves or enhances a person's status within his own gang indirectly preserves or enhances a person's status with other gangs as well. And, because a gang is the sum of its parts, the preservation of a gang member's status could also preserve the status of the gang itself. Conversely, if gang members allow rival gangs to perceive them as weak or of diminished status, the rivals predictably would view the gang itself as weakened or diminished. Thus, by defending his own status, West defended the status of his gang, the Nogales Crips. We presume the jury deduced this rather obvious fact from the evidence. [Liggins's] argument that the gang expert's opinion was unreliable and violated due process lacks merit.

[Liggins] responds that, even if West acted for the benefit of the Nogales Crips, there was no showing [Liggins] was "in a gang." In his briefing, [Liggins] describes the Nogales Crips as "an organization to which he did not even belong."

However, the gang expert testified that gang activities typically are committed only by members (those who claim membership in the gang and are "willing to represent it") or associates (those who "hang[] around" with the gang). Here, the evidence showed [Liggins] planned the drive-by shooting with West and helped him carry[] out the plan. Reasonable jurors could deduce from [Liggins's] participation in the shooting that he was at least an associate of the Nogales Crips and that he intended to act in a manner benefitting the gang. Indeed, [Liggins] had been [identified] as an associate of the Crips gang in 2001.

To sustain a jury's gang enhancement finding, "there must have been evidence upon which a rational trier of fact could find that [the petitioner] acted with the 'specific intent to promote, further, or assist in' *some* type of 'criminal conduct by gang members,' which may include the crimes of conviction." *Emery v. Clark*, 643 F.3d 1210, 1214 (9th Cir. 2011) (per curiam) (citations omitted). The Ninth Circuit previously held in *Garcia v. Carey*, 395 F.3d 1099 (9th Cir. 2005), and *Briceno v. Scribner*, 555 F.3d 1069 (9th Cir. 2009), that the "gang enhancement can only be applied when the defendant had the specific intent to facilitate gang members' criminal activities *other than* the charged crime." *Emery*, 643 F.3d at 1215-16. The California Supreme Court explicitly disapproved that interpretation in *People v. Albillar*, 244 P.3d 1062 (Cal. 2010), and the interpretation is no longer binding in this Circuit. *See Emery*, 643 F.3d at 1215 (recognizing "that the California Supreme Court has overruled *Briceno* and *Garcia's* interpretation of [California Penal Code] section 186.22(b)(1)" and applying "the

California Supreme Court's authoritative interpretation of section 186.22").  Thus, "[t]here is no further requirement that the defendant act with the specific intent to promote, further, or assist a *gang*; the statute requires only the specific intent to promote, further, or assist criminal conduct by *gang members*."  *Albillar*, 244 P.3d at 1075-76 (citations omitted).[1]

In this case, the majority of evidence that Liggins's acts were gang-related and thus were subject to the gang enhancement were provided by a gang expert who testified that an individual may act in retaliation to defend the status of a gang and that gang activities are typically committed only by members or associates.  This testimony falls within the recognized scope of permissible expert testimony as to gang culture, habits, and motivation.  *In re Frank S.*, 46 Cal. Rptr. 3d 839, 842 (Cal. Ct. App. 2006) ("It is well settled that a trier of fact may rely on expert testimony about gang culture and habits to reach a finding on a gang allegation.").  "[B]ecause a motive is ordinarily the incentive for criminal behavior, its probative value generally exceeds its prejudicial effect, and wide latitude is permitted in admitting evidence of its existence."  *People v. Lopez*, 81 Cal. Rptr. 386, 391 (Cal. Ct. App. 1969) (citation and internal quotation marks and brackets omitted).

The Court agrees with the state court's determination that the expert's testimony provided sufficient evidence regarding Liggins's involvement in the Nogales Crips gang and to prove the elements required for finding a criminal street gang enhancement.  Moreover, as there

---

[1]     The state court addressing Liggins's claim on habeas review issued its opinion on October 28, 2010, nearly two months before the decision in *Albillar* was rendered and well before the Ninth Circuit issued its decision in *Emery* disavowing the requirement that a prosecutor prove specific intent to promote, further, or assist a gang.  Therefore, the state court's analysis employed a heightened standard to Liggins's claim that is no longer applicable in this case.

is no requirement that the prosecution prove intent to otherwise benefit the gang, Liggins's claim that sufficient evidence did not support such a conclusion is not relevant. When viewing the circumstantial evidence presented by the expert witness in the light most favorable to the prosecution, a jury could reasonably infer that Liggins committed the charged offenses beyond a reasonable doubt "in association with" the Nogales Crips gang and that he did so "with the specific intent to promote, further, or assist in any criminal conduct by gang members" pursuant to Penal Code § 186.22(b)(1). *See also People v. Romero*, 43 Cal. Rptr. 3d 862, 865 (Cal. Ct. App. 2006) (explaining that § 186.22 enhancement may be proven with expert testimony about criminal street gangs).

In sum, the Court concludes that the state court's denial of Liggins's sufficiency of the evidence claim with respect to the gang enhancement was not contrary to nor did it involve an unreasonable application of clearly established federal law, and it did not constitute an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). Accordingly, because Liggins fails to establish by clear and convincing evidence that the state court's factual findings were erroneous and the record does not compel the conclusion that no rational trier of fact could have found proof that the shooting was committed with the intent to benefit a street gang, Liggins cannot prevail on this legal insufficiency claim.

E.      *Claim 10.  Legal sufficiency of evidence to support felony child endangerment.*

Liggins further argues that "this Court should clarify what evidence is required to support convictions for child endangerment under Penal Code section 273a." He contends that "the

15

evidence presented was insufficient to show violations of Penal Code section 273a." Pursuant to

Penal Code § 273a(a), "[a]ny person who, under circumstances or conditions likely to produce

great bodily harm or death, willfully causes or permits any child to suffer . . . unjustifiable . . .

mental suffering" commits felony child endangerment.

Liggins raised this claim in his direct appeal, asserting that "the circumstances or

conditions surrounding the incident were not shown to be likely to produce great bodily harm or

death" and that the prosecution failed to show that "post-traumatic stress disorder is a form of

mental suffering as required by the statute." The appellate court denied both arguments:

> [Liggins] claims that "[t]he danger of any return fire from the house was a
> speculative argument advanced by the prosecutor but devoid of any basis in the
> evidence." He overlooks the gang expert's testimony that drive-by shootings are
> inherently dangerous because the target could retaliate against shooters, effectively
> creating "warfare on the streets;" and danger could result from citizen or police response.
>     The jury evidently believed the gang expert's testimony on the danger of drive-by
> shootings; no contrary evidence was offered.
>      . . . [Liggins] has not attempted to show that the described danger was either
> physically impossible or false without resorting to inferences or deductions. He claims
> the danger was lessened because the van promptly left the scene after the shooting;
> however, this simply means that the life-threatening danger was of a shortened duration.
> The statute sets no minimum period during which the danger must persist. [Liggins] has
> failed to show insufficiency of evidence to support the findings.
> . . . .
>      . . . In [Liggins's] view, "mental suffering means something other than PTSD,
> which is a form of anxiety disorder which has a strong genetic component to it."
>     The claim that PTSD is an "anxiety disorder" with a "strong genetic component"
> is not supported by argument, citation of relevant authority, or record reference. In any
> event, it fails on the merits.
>     Section 273a does not require that "mental suffering" consist of any particular
> psychiatric disorder. Regardless of whether a PTSD diagnosis is sufficient to show
> "mental suffering" within the meaning of the statute, [Liggins] has not shown that the
> children's constellation of symptoms . . . somehow falls short of "mental suffering."

Again, Liggins fails to establish by clear and convincing evidence that the state court's

factual findings were erroneous and the record does not compel the conclusion that no rational

trier of fact could have found proof that the felony child endangerment was committed.

Accordingly, Liggins cannot prevail on his final legal insufficiency claim.

2.      *Prosecutorial Misconduct/Brady Claim* (Claim 4)

Liggins next argues that "the prosecutor committed misconduct by withhold[ing]

exculpatory evidence."  It appears that Liggins is renewing before this Court claims he raised in

his state habeas petition: that the prosecutor withheld both a surveillance video of the shooting

and a police report reflecting that the subject house and a neighboring house had been shot at

two weeks before the incident.  On habeas review, the state court denied the claim that the

prosecutor wrongfully withheld surveillance footage, concluding that Liggins failed "to present

to the court any actual surveillance camera footage that would show that no bullets were shot at

the house" and that it was unclear "whether the surveillance cameras had sufficient range to

show whether a car was driving by or that its occupants were shooting guns from it."  The court

likewise denied his claim that the prosecutor withheld a police report, noting again that Liggins

failed to present to the court the police report in question and finding that the report would have

been "merely cumulative" because there was testimony presented at trial that the bullets were

there before the charged offense occurred.

"[T]he Constitution does not require the prosecutor to share all useful information with

the defendant."  *United States v. Ruiz*, 536 U.S. 622, 629 (2002) (citing *Weatherford v. Bursey*,

429 U.S. 545, 549 (1977) ("There is no general constitutional right to discovery in a criminal

case.").  *Brady v. Maryland*, 373 U.S. 83 (1962), and its progeny require the prosecution to

disclose material information that is "favorable to the accused, either because it is exculpatory,

or because it is impeaching."  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  A *Brady*

violation occurs only where there is a "reasonable probability" that a different verdict would have resulted from disclosure of the information that the defendant claims was suppressed. *Id.* at 281. That is, "a constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." *United States v. Bagley*, 473 U.S. 667, 678 (1985).

Respondent argues that Liggins has not provided any evidence to support his conclusory allegations. As Respondent correctly notes and as the state court recognized, there is no evidence that the surveillance video even exists. Moreover, the state court's conclusion that the purported evidence was not material because Liggins failed to prove what the surveillance video could show and the police report would have been merely cumulative was neither unreasonable nor contrary to federal law. Just as he did before the state courts in his habeas proceedings, Liggins has failed to shoulder his burden of establishing entitlement to relief. Liggins is therefore not entitled to relief on Claim 4.

3.    *Confrontation Claim* (Claim 5)

Liggins additionally argues that his confrontation right was violated when the testimony of Old Man was introduced on redirect examination of Detective Johnson. Liggins raised this claim in his state habeas petition. The court denied the claim on procedural grounds after noting that Liggins's failure to attach the relevant pages of the trial court transcript barred his claim from review. The court additionally proffered an alternative ground for denial, finding that Liggins "fails to show prejudice, as the other statements by the other witnesses, as well as [his] own admission to police that he fired the .40 caliber gun, clearly established [his] guilt, such that

exclusion of the detective's testimony would not have been reasonably likely to have made a difference in the outcome of the trial."

At trial, Detective Johnson testified for the prosecution as a gang expert.  During Johnson's testimony, the court informed the jury:

> In the course of the expert's testimony, he may rely on some things that are hearsay, and are to be considered by you only in weighing his opinion that's based on those things, and not necessarily for the truth of those matters, and not for any other purpose other than to determine the weight you are going to give his expert opinion.[2]

During redirect examination, Detective Johnson affirmatively answered when asked whether Douglas Bell had told Johnson during an interview that he "shot approximately four times, and a person he referred to as Monty shot approximately three times at the house."  The court recognized that Douglas Bell's statements were hearsay and instructed the jury, "So Detective Johnson is saying, here's some things Douglas Bell said outside of court, and it's hearsay.  You may consider that for giving weight to the detective's opinion about whether these acts were committed for the benefit of the gang."

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."  U.S. CONST. amend. VI.  "The 'main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.'" *Fenenbock v. Dir. of Corr.*, 692 F.3d 910, 919 (9th Cir. 2012) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986)

---

[2]    Both the California Code of Evidence and the Federal Rules of Evidence permit an expert to rely on inadmissible hearsay evidence so long as the evidence is of the kind experts in the field regularly consult.  CAL. EVID. CODE § 801; FED. R. EVID. 703.  The introduction of hearsay evidence in expert gang testimony is discussed *infra.*

(emphasis omitted)).  The Confrontation Clause applies to the states through the Fourteenth

Amendment.  *Pointer v. Texas*, 380 U.S. 400, 406 (1965).

Several California decisions have rejected Liggins's argument that the admission of gang

expert testimony containing otherwise-inadmissible hearsay violates a defendant's right of

confrontation under the Sixth Amendment.  *See People v. Ramirez*, 64 Cal. Rptr. 3d 96 (Cal. Ct.

App. 2007); *People v. Fulcher*, 38 Cal. Rptr. 3d 702 (Cal. Ct. App. 2006); *People v. Thomas*, 30

Cal. Rptr. 3d 582 (Cal. Ct. App. 2005).  In *Thomas*, the California Court of Appeal explained:

> *Crawford* does not undermine the established rule that experts can testify to their
> opinions on relevant matters, and relate the information and sources upon which they rely
> in forming those opinions.  This is so because an expert is subject to cross-examination
> about his or her opinions and additionally, the materials on which the expert bases his or
> her opinion are not elicited for the truth of their contents; they are examined to assess the
> weight of the expert's opinion.  *Crawford* itself states that the Confrontation Clause
> "does not bar the use of testimonial statements for purposes other than establishing the
> truth of the matter asserted."

30 Cal. Rptr. 3d at 587 (citation omitted).

This Court also has repeatedly held since *Crawford* that the introduction of otherwise-

inadmissible evidence in support of a gang expert witness's testimony does not violate the

Confrontation Clause.  *See, e.g.*, *Her v. Jacquez*, No. 09-cv-612, 2011 WL 1466868, at *33 (E.D.

Cal. Apr. 18, 2011) (gang expert's testimony about specific gangs and their activities and

membership, derived from information imparted to him by others, did not violate Confrontation

Clause); *Lopez v. Jacquez*, No. 09-CV-1451, 2010 WL 2650695, at *5 (E.D. Cal. Jul. 1, 2010)

("[T]he Court does not find that an objective application of *Crawford* would result in a finding

that the gang expert's reliance on hearsay testimony to explain his opinion that Petitioner was a

member of the West Fresno Norteños, and that the West Fresno Norteños are a criminal street

gang, to be in violation of Petitioner's Confrontation Clause rights."); *Eddington v. Adams*, No.

20

CV F 06-1770, 2008 WL 397290, at *10 (E.D. Cal. Feb. 8, 2008) (gang expert's reliance on gang member's statement as part of basis for opinion did not violate *Crawford*).

Moreover, Liggins's argument that Detective Johnson's testimony violated his confrontation is foreclosed by the Supreme Court's more recent decision in *Williams v. Illinois*, 132 S. Ct. 2221 (2012). In that case, the Court held that evidence that is introduced to provide the facts upon which an expert bases his or her opinion but not to prove the truth of the underlying facts does not implicate the Confrontation Clause. *Williams*, 132 S. Ct. at 2232-40. The Court reiterated that the Confrontation Clause "has no application to out-of-court statements that are not offered to prove the truth of the matter asserted." *Id.* at 2228.

Here, Johnson's testimony did not violate Liggins's rights under the Confrontation Clause because it was not offered for the truth of the information asserted but as a foundation for Liggins's expert testimony regarding whether the acts were committed for the benefit of the gang. A review of the record indicates that the conversations Johnson had were used by him merely to form the basis for his opinions; he did not testify at Liggins's trial as to the veracity of the statements made and thus did not act to merely convey testimonial hearsay. In this regard, the jury was specifically instructed that hearsay matters relied on by Johnson as an expert witness were not offered for the truth of those matters but were to be considered only in evaluating the basis of the expert's opinions. Further, as an expert, Johnson could properly base his opinion on inadmissible evidence, including hearsay, of a kind that experts in the field regularly consult. CAL. EVID. CODE § 801; FED. R. EVID. 703. Liggins was given the opportunity to cross-examine Johnson regarding his opinions as well as the basis thereof, and the jury was able to judge the credibility of his testimony in light of the sources he described in his

testimony and upon which he relied.  Accordingly, Liggins is not entitled to relief with respect to his confrontation claim.

4.      *Sentencing Enhancements Claim* (Claim 6)

Liggins additionally argues that the jury's verdict on the gang enhancements could not be the basis of his sentence because "the jury did not indicate a finding on [Penal Code §] 186.22(b)(4) or 186.22(b)(5) allegations."  Liggins raised this claim in his state habeas petition, arguing that the jury's finding as true the allegations based on § 186.22(b)(1) could only support a term of years and not the indeterminate term actually imposed.  The superior court denied the claim, concluding:

> The court's underlying files show that the jury verdicts on all the gang enhancements were true findings under Penal Code § 186.22(b)(1).  That was all that was necessary for the jury to find true.  Penal Code § 186.22(b)(1) sets forth the elements of the enhancement itself, and sets forth the punishment when the enhancement is found true, which is either that set forth in Penal Code § 186.22(b)(1)(A)-(C) or, as designated in Penal Code § 186.22(b)(1) itself, that set forth in Penal Code § 186.22(b)(4) or (5), when the substantive offense to which the enhancement attaches is one listed in Penal Code § 186.22(b)(4) or (5).  Penal Code § 186.22(b)(4) sets forth the punishment as a punishment for the substantive offense itself, when the enhancement attaches to a Penal Code § 246 offense, as that of 15 years to life.  That was for the court to determine, and not a jury; the jury needed only to determine that the elements of the enhancement were true beyond a reasonable doubt, which the jury did in its verdict.  As there was no error, the claim is denied.

The essence of Liggins's argument is that the state court's interpretation of Penal Code § 186.22 is incorrect, but this Court is bound by the state court's interpretation of California state law.  *See Bradshaw*, 546 U.S. at 76.  A petitioner may not transform a state-law issue into a federal one by simply asserting a violation of due process.  *See Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).  The state court's determination that the trial court correctly determined Liggins's sentence in light of the jury's finding as true the § 186.22(b)(1) allegations is both

reasonable and not contrary to federal law.  Accordingly, Liggins is not entitled to relief on Claim 6.

5.  *Ineffective Assistance of Counsel Claims* (Claims 7 and 8)

Liggins further argues that both his trial and appellate counsel rendered ineffective assistance.  To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  466 U.S. 668, 687 (1984).  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.*  The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief.  *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95.  Thus, Liggins must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.  *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs.  *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that

23

> determination was unreasonable—a substantially higher threshold."  And,
> because the *Strickland* standard is a general standard, a state court has even more
> latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v.*

*Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

It is through this highly deferential lens that a federal habeas court reviews *Strickland*

claims under the § 2254(d) standard.  *See Knowles*, 556 U.S. at 123 (citing *Yarborough v.*

*Gentry*, 540 U.S. 1, 5-6 (2003) (per curiam)).

Liggins contends that his "trial counsel rendered ineffective assistance because he argued

against" him when counsel stated during closing argument that Liggins fired the .40 caliber gun

in the air.  Liggins raised this claim in his state habeas petition.  The court denied the claim on

procedural grounds due to Liggins's failure to include a copy of the transcript, which, under

California law, warrants dismissal.  The court alternatively concluded:

> [T]wo witness statements were admitted into evidence that [Liggins] shot the .40
> caliber gun, and [Liggins's] statement to police that he shot the gun was in evidence, thus
> this appears to have been a reasonable tactical choice on trial defense counsel's part, to
> argue that [Liggins] did not intend to shoot at any person, place, or object and purposely
> shot only in the air.  [Liggins] did not testify, thus trial defense counsel could not argue
> that [Liggins] himself had presently claimed not to have shot the gun, when [Liggins] had
> admitted to police that he did shoot the gun.  In any event, had counsel not argued the
> point, it is not reasonably likely that it would have made any difference in the outcome of
> the trial, requiring denial of the claim.

The district court's denial of his claim on procedural grounds bars Liggins from relief on

federal habeas review.  *Cone v. Bell*, 556 U.S. 449, 465 (2009) ("[C]onsistent with the

longstanding requirement that habeas petitioners must exhaust available state remedies before

seeking relief in federal court, we have held that when a petitioner fails to raise his federal claims

in compliance with relevant state procedural rules, the state court's refusal to adjudicate the

24

claim ordinarily qualifies as an independent and adequate state ground for denying federal review.").  Moreover, as the state court recognized, the record indicates that counsel's decision to argue that Liggins fired the gun into the air was a tactical one that this Court may not second guess. *Strickland*, 466 U.S. at 690-91.  Liggins therefore cannot demonstrate that his trial counsel was ineffective.

Liggins asserts that his appellate counsel was likewise ineffective for failing to raise on direct appeal the arguments he raises in this Petition on Claims 1-6.  But as this Court has already discussed, those arguments are without merit; consequently, Liggins's appellate counsel cannot be ineffective for failing to raise them on appeal. *See Lockhart v. Fretwell*, 506 U.S. 364, 374 (1993) (O'Connor, J., concurring) (failing to raise a meritless objection cannot constitute prejudice under a *Strickland* ineffective assistance of counsel claim); *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (appellate counsel does not have an obligation to raise every nonfrivolous argument); *Miller v. Keeney*, 882 F.2d 1428, 1434-35 (9th Cir. 1989) (appellate counsel's failure to raise a weak issue did not constitute ineffective counsel).  Accordingly, Liggins cannot prevail on either of his ineffective assistance of counsel claims.

5.     *Improper Gang Enhancement Claim* (Claim 9)

Liggins additionally contends that "this Court should decide what constitutes a gang-related offense under the Street Terrorism Enforcement and Prevention (STEP) Act."  Because Liggins raises in his supporting facts contentions he made on direct appeal of his conviction, this Court will construe his argument as a renewal of his claim that the gang enhancements were improperly appended to an incidental offense in violation of California law because the

application of a gang enhancement to the child endangerment counts "does not carry out the state[d] purposes of the STEP Act."  The appellate court denied his claim, concluding:

> [Penal Code §] 186.21 includes a finding that California is "in a state of crisis which has been caused by violent street gangs whose members threaten, terrorize, and commit a multitude of crimes against the peaceful citizens of their neighborhoods."
> [Liggins] does not dispute that the children in the van were peaceful citizens, unwittingly in the neighborhood, and entitled to the STEP Act's protection from gang violence.  Instead of receiving that protection, they were driven to the scene where defendant and West opened fire on a residence.  This was inherently dangerous because, as the gang expert explained, the target gang member could have retaliated against the shooters, effectively creating "warfare on the streets"; and there was the risk of a dangerous response by citizen[s] or police.  Imposing the enhancement furthers the purpose of protecting the child from gang violence.

In his Petition, Liggins disagrees with the appellate court's conclusion, requesting relief because "the shooting was the result of a personal beef between Lamont West and Paul Bell." But as Respondent correctly notes, Liggins fails to raise a claim of constitutional dimension cognizable in this Court because his Petition presents only a state law claim.  Again, this Court is bound by the state court's interpretation of California state law.  *See Bradshaw*, 546 U.S. at 76. The state court's determination that appending the gang enhancement to the child endangerment counts did not violate California law is both reasonable and not contrary to federal law.  Liggins therefore is not entitled to relief on this claim.

6.    *Multiple Punishment Claim* (Claim 11)

Finally, Liggins argues that "he is being multiply punished–once via count 1 and again via counts 3, 4, and 5– for the single act or course of conduct of shooting out the window of the vehicle in which he was riding."  Liggins raised this claim on direct appeal, contending that the terms imposed on Counts 3-5 must be stayed because they were imposed for the same course of conduct underlying Count 1 and thus prohibited by Penal Code § 654.  The appellate court

rejected the claim, concluding that § 654 does not require staying the sentences on Counts 3-5

under California case law:

> "The purpose of the protection against multiple punishment is to insure that the defendant's punishment will be commensurate with his criminal liability.  A defendant who commits an act of violence with the intent to harm more than one person or *by a means likely to cause harm to several persons* is more culpable than a defendant who harms only one person.  For example, a defendant who chooses a means of murder that places a planeload of passengers in danger, or results in injury to many persons, is properly subject to greater punishment than a defendant who chooses a means that harms only a single person.  This distinction between an act of violence against the person that violates more than one statute and such an act that harms more than one person is well settled."

In his Petition, Liggins again disagrees with the appellate court's conclusion, requesting

relief "because the only victim or intended victim of the shooting act was Paul Bell."  But, again,

Liggins fails to raise a claim of constitutional dimension cognizable in this Court because this

Court is bound by the state court's interpretation of California state law.  *See Bradshaw*, 546

U.S. at 76.  The state court's determination that the sentence imposed did not violate Penal Code

§ 654 is both reasonable and not contrary to federal law.  Liggins therefore is not entitled to

relief on this claim either.

## V. CONCLUSION AND ORDER

Liggins is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Amended Petition under 28 U.S.C. § 2254

for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain

a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree

with the district court's resolution of his constitutional claims or that jurists could conclude the

issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the

Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); Ninth Circuit R. 22-1.

      The Clerk of the Court is to enter judgment accordingly.

      Dated: October 10, 2013.

/s/James K. Singleton, Jr.    <br>
JAMES K. SINGLETON, JR.<br>
United States District Judge